## SEARCH OF JUNK SHOPS.

[Circuit Court of Lucas County.]

JACOB NEIFELD v. STATE OF OHIO.

Decided, October 26, 1901.

*Criminal Law—Statute Relating to Defects in Indictments Applies to Police Court Affidavits—Failure to Negative the Requirement of the Statute—Answers not Responsive but Competent as Testimony —Prosecution of Proprietor of Junk Shop—For Failure to Retain Property in his Possession for Thirty Days—Officer Searches the Place Without Authority—Conflicting Testimony and Reasonable Doubt.*

1. The provision of Section 7215, that "want of averment * * * or other imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits," applies to affidavits and informations as well as to indictments.

2. A charge that the defendant failed and neglected to do is equivalent to charging that he did not do the thing required by the statute.

3. Where an answer by a witness is not responsive, but is proper testimony in the case, it is discretionary with the court whether or not the answer shall stand, and error wil not lie to the overruling of a motion to strike out the answer.

4. A direct conflict in the evidence is not sufficient to warrant a reviewing court in holding that the court below erred in finding beyond a reasonable doubt that the defendant was guilty of the offense charged.

5. It is competent to show by oral testimony in the prosecution of the proprietor of a junk shop, under Section 4413, for failing to retain in his possession for thirty days certain old metal purchased by him, that he made a report on the day of the alleged purchase, where the report was in court, and was handed to the witness, and was afterward attached to the bill of exceptions.

6. In the absence of action by a police board authorizing the inspection of junk shops, a police officer who has been directed simply to look after such places, is without authority to enter a junk shop to search for stolen property without a search warrant, and where this is attempted the proprietor of the place does not become liable to prosecution if he resist the officer.

HULL, J.; HAYNES, J., and PARKER, J., concur.

Heard on error.

The plaintiff in error is the same person in both these cases (above entitled and same v. Toledo), and they will be discussed, so far as possible, together, although they must be considered to some extent separately, first taking up the case of Neifeld against the state of Ohio.

Neifeld was prosecuted in the police court of the city of Toledo for the violation of Section 4413, Revised Statutes. A jury being waived, he was tried to the court and found guilty, and sentenced to pay a fine, and it is to reverse this judgment that this proceeding is prosecuted. He was charged with violating the provisions of Section 4413, Revised Statutes, requiring a junk shop keeper to retain in his possession property for a period of thirty days after it has been purchased. The statute provides as follows:

"Any person who purchases, sells, exchanges, or receives second-hand furniture, second-hand articles of any kind, scrap iron, old metal, canvas, junk or lead pipe, except plow irons and old stoves and furniture, shall put up in a conspicuous place, in or upon his shop, store, wagon, boat, or other place of business, a sign, having his name and occupation legibly inscribed thereon, and shall keep a separate book open to inspection by any member of any police force, city marshal or constable, or any other person, in which shall be written, in the English language, at the time of every purchase or exchange of any of the articles above mentioned, a description thereof, the name, description, and residence of the person from whom purchased and received, and the day and hour when such purchase or exchange was made; each entry shall be numbered consecutively, commencing with number one, and any and all of such articles so purchased or exchanged shall be retained by the purchaser thereof for at least thirty days before disposing of the same, and kept in an accessible place in the building where such articles are purchased or received, and a tag attached to such article in some visible and convenient place, with the number written thereon corresponding to the entry number on the book. And any such purchaser shall prepare and deliver every day to the mayor of the city in which such business is carried on, before the hours of 12 o'clock M.,

a legible and correct copy, written in English, from such book,
a description of all such purchases, purchased or received dur-
ing the preceding day, together with the hour at which the
purchase or purchases were made, together with a description
of the person or persons from whom the same was purchased.''

The plaintiff in error was arrested upon an affidavit purport-
ing to charge him with a violation of one of the provisions of
this statute, and an information was thereafter filed in police
court, and he was tried upon that information, and found guilty,
and sentenced as stated.

There are various errors complained of by the plaintiff in
error. First, it is claimed that the affidavit and the informa-
tion based upon the affidavit are defective, in that they do not
charge an offense under this statute. The claim of counsel for
plaintiff in error is that the affidavit and the information do
not charge with sufficient definiteness that he did not retain
the old metal. The language of the affidavit is this:

''And said Jacob Neifeld did unlawfully fail and neglect to
retain said lot of old metal, to-wit, said eighty-two pounds cop-
per wire, thirty days before disposing of the same.''

And the language of the information is the same.

The statute provides, ''And any and all of such articles so
purchased or exchanged, shall be retained by the purchaser
thereof for at least thirty days before disposing of the same.''

It is argued that the affidavit and information should nega-
tive the provision of the statute; that the charge should be
plainly and distinctly made that he did not retain the articles
in question; that that exactly, or in substance, should be the
language of the affidavit; and that the language used is not
equivalent to charging the plaintiff in error with a violation of
the provision of the statute, in that it charges only that he
failed and neglected to retain. It is urged that he might have
failed to do anything in the way of retaining this property, or
might have neglected to retain it, or to do anything to retain
it, and still that it might have been retained, and that therefore
the affidavit and information do not charge a violation of this
section.

We are of the opinion that this language does substantially charge the offense named in this statute; that to charge him with failing to retain the old metal is in substance charging that he did not retain it. It was his duty under the statute to retain the metal for thirty days after its purchase. The affidavit and information charged that he failed to do this. It seems to us that to charge him with failing to retain the metal as provided by statute, is substantially charging that he did not retain it. It certainly was sufficient to notify the defendant below and his counsel of the offense with which he was charged. We can not see that the defendant could have been prejudiced by reason of the language not being more definite in advising him of the charge that was made against him. Section 7215, Revised Statutes, relating to indictments, applies as well to affidavits and informations. The title of Section 7215 is: "What defects in an indictment are not fatal." Then, after reciting various things that are not fatal, the statute provides:

"Nor for want of averment of any matter not necessary to be proved; nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

This statute was considered by the Supreme Court in *Burke* v. *State*, 34 Ohio St., 79, where there was a conviction for burglary. The Supreme Court say in the syllabus:

"Where the charge is burglary by breaking into the car of a railroad company, designated by its corporate name, but the indictment contains no averment that the company was incorporated, the accused can not avail himself of the defect, if defect it be, in view of the code of criminal procedure."

And in the opinion, which was delivered by Judge Okey, on page 81, it is said:

"A great advance has been made in the laws relating to crimes, punishments, and criminal procedure. The fact is unquestioned that there was a time when felonies, which at common law were few in number, embraced by parliamentary enactments more than two hundred offenses, when acts were punishable with death, which, if committed in this state, at this day, would not be punishable at all; when one charged with felony

was not permitted to have a copy of or even examine the indictment, to call witnesses in his defense, or to have the assistance of counsel; when no instance could be found in which a jury, in a criminal case, had failed to render a verdict on the same day it was impanneled; when jurors were fined for refusing to return a verdict of guilty; when the ordinary course was to sentence as soon as a verdict of guilty was rendered, and cause the accused to be executed on the following morning, it is not strange that in such a state of the criminal law, humane judges, *in favorem vitae,* would determine cases upon technicalities which at this day would be regarded as frivolous. But all this is changed. Now the tendency is, on the one hand, to disregard that which is merely formal and technical; on the other, to preserve, in every stage of the case, all matters of substance, and afford the accused a trial as full, fair, and impartial as can reasonably be desired, with the presumption of innocense effectual for his protection, until his guilt is proved beyond reasonable doubt.''

No objection was made to this affidavit or information until the trial was commenced, and then the objection was made that no evidence could be introduced under the affidavit. We think the affidavit did in fact charge a violation of the statute, and in any event that if there was any defect in the affidavit, it did not prejudice the substantial rights of the defendant below.

It is claimed that various errors were committed by the court in the admission of evidence upon the trial of the case. As apppears on page 2 of the bill of exceptions, the prosecuting witness was asked:

''What, if any, report did he, the defendant, Neifeld, make on or about the 8th day of December, 1900, of metal claimed to be purchased by him?''
This was objected to, and overruled, and he answered: ''He made a report.''

And then follows the question, ''Is this the report?'' And he answers, ''Yes.''

We see no objection to this testimony, in view of the fact that the report was there, and was handed to the witness, and was afterwards admitted in evidence, and is attached to the bill of exceptions. It seems from the record that after he made this report, Daley, who was an officer of some kind, went over

to Neifeld's place of business with the report, for the purpose of making an examination of some items contained in the report, and he is asked, on page 4, a question, the answer to which is objected to. The question is this:

"State what, if any further examination you made at that time, of the items." He answered: "I went over to get a better description of the wire, and Neifeld told me he had disposed of it."

Counsel moved to strike out this answer, for the reason that it was not responsive to the question, but the court overruled that motion, and error is claimed upon that answer. It is true that the answer is not responsive to the question. He was asked what further examination he made at the time. He answers by saying he went over to get a better description of the wire. That far the answer is substantially responsive to the question. And then he adds, "And Neifeld told me he had disposed of it." The inference from the answer is that he went over to examine the wire, and did not find it there, and accordingly made no examination, and the witness says that Neifeld told him that he had disposed of it. While the answer is not responsive to the question, it still was proper testimony in the case, and was an admission, of the defendant, that he had disposed of the wire, and was a proper thing to interrogate the witness upon. The witness was cross-examined, and here was an opportunity to cross-examine him fully upon this answer. We think it was a matter discretionary with the court whether this answer should stand or not, not being wholly responsive to the question, and that there was no error in the court overruling the motion to strike out the answer.

It is urged further that the conviction of Neifeld was contrary to the evidence and not sustained by sufficient evidence.

It appears that on December 8, 1900, he filed a report as required by law, that contained in it an item as follows: "82 copper;" and under the head of "description and residence of person selling," "H. W. Cliferton, 819 Colburn St." After this report was filed, Mr. Daley, who said he was a police detective, went over to Neifeld's place of business, and whether

Neifeld is guilty or not depends largely upon the testimony of Daley and Neifeld as to what occurred upon the occasion of Daley's visits on December 10th and 13th. Mr. Daley testifies that when he went over to Neifeld's place of business after the filing of this report, he found this wire there—saw it there, and talked with Neifeld about it; and that he came back three days later and inquired about it, and Neifeld told him he had sold it or disposed of it. Neifeld denies this, and claims that there was no wire there; that he had no such conversation with Daley; that he did not buy any copper wire at that time; that the copper referred to in his report was not copper wire, but was other material. Neifeld was not arrested for this offense until about a month later.

The question of fact involved here was submitted to the court. It is true there is a direct conflict in the evidence, Daley testifying what he claims about it on the one hand, and is contradicted by Neifeld upon the other. That is not sufficient to warrant a reviewing court in finding that the court below erred in finding beyond a reasonable doubt that Neifeld was guilty of the offense charged. If that were true, a great many criminal cases would have to be reversed on the ground that the judgment was not sustained by sufficient evidence. The court before whom the case is tried has an opportunity to see the witnesses, and observe their conduct on the witness stand, their candor or want of candor, and has a much better opportunity of reaching a just conclusion, and determining where the truth really lies, than a court that knows nothing about the case except what appears in the written record. This rule has been recognized in *Breese* v. *State*, 12 Ohio St., 146, where the court say:

"A judgment will not be reversed because the verdict is contrary to the evidence, unless it is manifestly so, and the reviewing court will always hesitate to do so where the doubts of its propriety arise out of a conflict in oral testimony."

This man was convicted of burglary. The court say, in a paragraph on page 156:

"The jury who try a cause and the court before which it is tried, have much better opportunities to determine the credi-

bility and effect of the testimony, and we ought, therefore, to hesitate before disturbing a verdict rendered by a jury and confirmed by a court, possessing such advantages, merely because there is an apparent conflict in the testimony. The conflict or its effect might all disappear, if the witnesses were examined before us and we could see and hear them face to face, as they were seen and heard by the court and jury whose verdict and judgment are passing in review before us.''

Upon an examination of the whole record we feel that we would not be warranted in disturbing the judgment upon the ground that it is not sustained by sufficient evidence. The judgment in this case is affirmed.

We will now consider the case of the same plaintiff in error against the city of Toledo.

On December 31, Daley again went to Neifeld's place of business, as he claims, to inspect his establishment and some property which he had, Daley being then and there in search of some property that was alleged to have been stolen. Neifeld was charged in this case with resisting Daley, who, it was alleged, was an officer duly authorized in the premises. He was tried before the police court without a jury, and found guilty, and sentenced to imprisonment in the workhouse, and it is to reverse this judgment that this second proceeding in error is filed. Neifeld was prosecuted in this case under an ordinance of the city of Toledo, which is as follows:

''Any person who shall, within the limits of this city, abuse, resist, or hinder any policeman, watchman or any other city officer in the execution of the duties of his office, shall be deemed guilty of an offense, and on conviction thereof shall be fined in any sum not less than five nor more than fifty dollars, and imprisoned at hard labor not exceeding thirty days. And in case of the refusal or neglect of any person to pay such fine and costs, the court shall order such person to be imprisoned at hard labor until the same are fully paid.''

Daley was acting, or claimed to be acting, under certain statutes of the state of Ohio which authorize the inspection of junk shops, and which contain other provisions in regard to junk shops, second-hand dealers, etc. The sections referred to are Sections 1917, 1918 and 1919, Revised Statutes. Section 1917 provides that:

"The mayor and the superintendent of police, and the lieu-
tenants of police within their district, shall possess powers of
general supervision and inspection over all pawnbrokers, junk
shop keepers, cartmen, hackmen, dealers in second-hand mer-
chandise, intelligence office keepers, and auctioneers within such
city; and in the exerióse, and in the furtherance of such pro-
visions, may, from time to time, detail members of the police
force to fulfill such special duties in the aforesaid premises, as
may be ordained by the board."

Section 1918 provides:

"The superintendent and the lieutenants within their dis-
tricts may, by authority in writing, empower any member of
the police force, whenever such member is in search of property
feloniously obtained, or in search of suspected offenders, to
examine the books of any pawnbroker, or his business premises,
or the business of any junk shop keeper or dealer in second-hand
merchandise, or intelligence office keeper; and such member of
the force, when thereunto authorized in writing as aforesaid,
and having in his possession a pawnbroker's receipt or ticket,
shall be allowed to examine the property purporting to be
pawned, pledged or deposited on such receipt or ticket, in the
possession of whomsoever such property may be; but no such
property shall be taken from the possessor thereof without due
process or authority of law."

The affidavit in this case shows that the prosecution was com-
menced under Section 1917, Revised Statutes, as it alleges
that—

"F. G. Daley, a police officer of said city, while said officer
was in the execution of the official duties of his office, to-wit,
attempting to inspect old metal in possession of said Neifeld,
he, the said Neifeld, being then and there a dealer in junk and
old metal, the said police officer being duly authorized and
qualified according to law to make such inspection, all of which
said defendant, at the time he so resisted, hindered and abused
the said police officer, well knew."

Section 1917, Revised Statutes, as has been observed from the
reading, provides for the inspection of junk shop dealers.

There are various errors complained of in this case. First,
it is claimed that the record in the case does not show that
Daley was a police officer. We think, on an examination of the

whole record, although he testifies he was a police detective, that it does show that he was a police officer, and that the evidence in that behalf is sufficient to establish that necessary element in the offense.  He testifies also that he was regularly detailed to do this work, and on page 6 of the record he testifies that the defendant knew he was an officer, and in other places in the record he speaks of himself as an officer.

But it is alleged that, although he was an officer, that he was proceeding in this matter without that authority which was required.  Daley's testimony shows that he went to Neifeld's place on December 31, and as he reached there, he saw Neifeld coming with a horse and buggy.  He took out a basket of lead pipe and took it into his shop.  Daley says he followed him into the shop, and when he laid the basket down he said: "Mr. Neifeld, I want to look at this lead pipe; I am looking for something that answers the description of what you have here," and Daley testifies: "And he grabs hold of the basket and says, 'you can't look at anything here without a search warrant;' and he went to the rear of the shop and tried to scatter it in around some barrels he had there, and I said, 'Neifeld, the law requires you to hold this for thirty days,' and he grabbed the basket and said, 'Damn you and the law.  Go out of here; you have no right in here at all without a search warrant;' and attempted to put me out of the building, and I arrested him." He then testifies that it occurred in this county, and that Neifeld grabbed hold of his coat and pulled off a couple of buttons.  That is substantially all there is of Daley's testimony in chief.  There was no evidence that Daley had a search warrant, or that he had any written authority, or that he had any authority in the premises except it be as he testified, that he was detailed to do this kind of work.

There can be no question that before one man can enter another man's premises and interfere with either his person or property, unless he has committed an offense in the presence of an officer, the person so interfering must have some authority of law.  The statutes provide that under a search warrant which has been properly issued, premises may be searched, and

Section 1917, Revised Statutes, provides for the inspection of junk shop keepers and their premises, and it provides that—

"The mayor and the superintendent of police, and the lieutenants of police within their districts, shall possess powers of general supervision and inspection over all pawnbrokers, junk shop keepers, cartmen, hackmen, dealers in second-hand merchandise, intelligence office keepers, and auctioneers within such city."

So that by those provisions of this section the officers named have general powers of supervision and inspection over such persons; and in the latter part of the statute it is provided that these officers "in the exercise, and in the furtherance of such provisions, may, from time to time, detail members of the police force to fulfill such special duties, in the aforesaid premises, as may be ordained by the board." There is no evidence in this record that the police board had ever taken any action under this statute, or had ever ordained any duty to be performed in carrying out the provisions of this section. There is no evidence in the record that Daley had any authority whatever for what he did, except as he says he had been detailed to inspect and to look after these places.

We are of the opinion that it was necessary for the city to show the authority which Daley had, if he had any, under this statute; that it was necessary for the city to show that the police board had ordained certain duties to be performed, and that he had acted within the limits of the duties that had been prescribed by the police board. The power to enter a place of business at any time, and inspect it, or take possession of property, is rather a wide power, and might be abused; and the statute evidently was intended to throw around it restrictions and limitations, and to only authorize the officer to exercise such power and perform such duties as had been prescribed by the police board.

It is not necessary to cite authorities to show that an officer has no power except in certain cases to arrest without a warrant, or interfere with the personal property of another. It has been held a great many times: It has been held by the Supreme Court that one could not be properly convicted of re-

sisting a supervisor of roads, where the statute under which the supervisor was acting was unconstitutional (*Hendershot* v. *State*, 44 Ohio St., 208). Although the officer in that case, as the statute read and stood upon the statute books, had authority, he in fact had none, because the statute was unconstitutional.

If it should be claimed that he was acting under Section 1918, Revised Statutes, which refers to the examination of books, we find upon an examination of it that that section requires authority in writing. It provides that—

"The superintendent and the lieutenants within their districts may, by authority in writing, empower any member of the police force, whenever such member is in search of property feloniously obtained, or in search of suspected offenders, to examine the books," etc.

We are not advised under which statute the city was proceeding, as no brief was filed by counsel for defendant in error. We have considered both of the sections, and the evidence shows in this case that Daley was in search of property claimed to have been stolen. If it should be claimed that he was acting under Section 1918, Revised Statutes, then it is clear that he was acting without authority, because he had been given no authority in writing as required by this section.

Daley having no authority to enter Neifeld's place of business and take possession of his property, Neifeld had the right under the law to resist him, as he would any other person under the same circumstances. The fact that he knew Daley was an officer, if he had such knowledge, did not affect his rights. He was arrested there and then by the officer for the offense of resisting an officer. We are of the opinion that the city failed in the respects mentioned to make a case against Neifeld, and therefore the judgment should be reversed, for the reason that it is not sustained by any evidence upon these material elements in the case. We find no other errors in the record. The judgment will be reversed for the reasons stated, and the case remanded for a new trial.

*Seney & Johnson,* for plaintiff in error.

*M. R. Brailey* and *C. E. Sumner,* for defendants in error.